# Whelan, Appellant, *v.* Land Title and Trust Company.

*Contract—Building operation—Interest.*

Where the owner of a building operation enters into an agreement with a trust company by which the latter is to issue its policies guaranteeing the completion of the buildings and the title to the mortgages issued thereon, and the owner in order to secure the money for the operation enters into an agreement for a loan with a real estate broker by which the latter is to receive the mortgages and the builder's notes signed in blank, all of which with the money loaned and the mortgages assigned to the trust company, are to be deposited with the trust company until the completion of the buildings, and the broker agrees that the trust company shall retain the accrued interest on the mortgages as compensation for an advance by the trust company of a portion

of the money which the broker was not able to raise, and also for the insurance guaranteeing the completion of the building, the trust company is entitled to retain such interest, as against the owner of the operation, during the period running from the date when the advances were made by the trust company to the broker, and the date when the notes and mortgages were finally delivered by the company to the broker.

Argued Dec. 1, 1914.   Appeal, No. 64, Oct. T., 1914, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1909, No. 2,695, on verdict for defendant in case of Patrick J. Whelan v. Land Title and Trust Company.   Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Assumpsit to recover certain interest claimed by the plaintiff and alleged to have been wrongfully retained by the defendant.   Before BRÉGY, P. J.

At the trial the jury returned a verdict for plaintiff for $1,427.05; but on a motion for judgment for defendant n. o. v. judgment was entered for defendant, BRÉGY, P. J., filing the following opinion:

Whelan, the plaintiff, being about to engage in a building operation needed money to finance it.   He applied to one Miller to furnish him $126,000 by October 1, 1905, which money was to be paid by Miller to the Land Title Company on that date, upon the receipt of which they were to issue their policies, guaranteeing the completion of the buildings, the title to the mortgages, etc.   Miller was to receive from Whelan 140 mortgages on the houses to be erected and Whelan's promissory note for $900 with each mortgage and was to be paid a commission for raising the money needed.

On October 1, 1905, Miller not being able to raise the whole $126,000, made an arrangement with the Land Title Company by which they would treat the transaction as if the money had been furnished by Miller, would issue its policies and finance the operation, pay-

ing out money as required, regardless of whether it had been furnished by Miller or not. In return for such arrangement Miller deposited securities of his own in addition to the 140 mortgages and notes alluded to and agreed that the accrued interest on the mortgages should be retained by the Land Title Company as their compensation. By this is meant that as Miller furnished the money he received mortgages and notes to the amount he deposited until he finally furnished the whole $126,000 and got all the mortgages and notes.

The amount of accrued interest Miller paid to the Land Title Company, is the amount claimed by Whelan in this suit. It is admitted that the amount is $964.25.

By the agreement Whelan made with Miller he was to pay the interest on the mortgages and by the arrangement Miller made with the Land Title Company, Whelan was not obliged to pay anything more. We fail to see that Whelan has any claim on the money that Miller agreed should go to the title company.

If Miller had on October 1, 1905, furnished the $126,000 he would have been entitled to all the interest; not being able to do so he made an arrangement for some one else to do so, to wit: The Land Title Company, and agreed to pay them for so doing, the money he would have received if he had furnished the money.

In our judgment, the plaintiff, Whelan, has no right to the amount he claims. The money was furnished as his operation required it, he has not been obliged to pay $1.00 more than his agreement with Miller called for and the matter in our judgment is in the same position as if Miller had furnished the money. He did not do so it is true, but he got some one else to do it and the terms he made are of no interest to the plaintiff, if it did not increase his expense.

Judgment for defendant n. o. v.   Exception to plaintiff.

*Error assigned* was in entering judgment for defendant n. o. v.

*G. Von Phul Jones,* for appellant.

*James Wilson Bayard,* with him *John G. Johnson,* for appellee.

OPINION BY KEPHART, J., April 19, 1915:

Whelan, the appellant, being about to engage in a building operation, needed money to finance it. He applied to one Miller, a real estate broker, to furnish him $126,000 by October 1, 1905. The money was to be paid by Miller to the trust company on this date, and upon receipt thereof the trust company was to issue its policies guaranteeing the completion of the building and the title to the mortgages. Miller was to receive from Whelan as security therefor 140 mortgages on the houses to be erected and Whelan's collateral promissory note for $900, with each of said mortgages, and he was to be paid a commission for raising the money needed. On October 1, 1905, Miller, not being able to raise all of the money, made arrangements with the trust company by which it would treat the transaction as if the money had been furnished by Miller, would issue its policies and finance the operation, paying out the money as required by the appellant, regardless of whether the mortgages had been negotiated by Miller or not. In return he deposited with the trust company the mortgages and notes referred to, and, in addition, securities owned and controlled by him, and his personal security in the form of an agreement to pay to the trust company the difference between the value of his securities and the amount that he had agreed to furnish Whelan, this difference being the sum of $106,200. He also agreed to pay the trust company interest on this amount and in payment of this interest the trust company should retain the accrued interest on the mortgages as compensation for the loan of the money and its insurance guaranteeing the completion of the building, etc. On the day of settlement between Miller and Whelan, after this agreement between Miller and the trust company

had been concluded, Whelan, who had been holding the bonds and mortgages awaiting Miller's deposit of the money, turned over to Miller the collateral notes signed by him, without a payee named therein, and the mortgages duly assigned to the defendant, and by Miller the notes and mortgages were delivered to the trust company. Miller did not sell these mortgages and notes until some time after October 1. Appellant claims the interest, $964.25, accruing from October 1 to the date of sale.

As between this appellant and Miller, the appellant had everything his contract called for. His mortgages had been insured against liens, municipal claims, street improvements, and the completion of the building. The money necessary for the work was immediately available and did not depend on the future sales of the notes. It was not material whether the trust company immediately credited the $126,000 to the appellant's account. It is important to know if there was any default on its part. None appears from the evidence, in fact, before any of the notes had been sold, the trust company had advanced to appellant a large amount of money and guaranteed the payment of certain of his accounts. Nor is it material that all of the money was not called for by the appellant before any of the notes were sold. The trust company was required to have sufficient funds, or, if necessary, the entire amount available at all times for use in the completion of this building operation. The future negotiation of the notes was a consideration with which Miller and the trust company would have to deal. Had either been unable to sell a single security, appellant's building operation would not have been stopped. When these notes were sold, the deposit of the money was not for the benefit of this appellant but it was in liquidation of the obligation which subsisted between Miller and the appellant. The appellant surely would not contend that he was entitled to this interest if Miller had personally

deposited the money in the trust company. What difference does it make if, on his personal security and with the transfer of the notes and mortgages, the trust company advanced and deposited the money? When the notes and mortgages were delivered to Miller on the day of settlement, the appellant parted with his title to them. The present controversy arises from an arrangement between Miller and the trust company wherein Miller had agreed to pay interest as compensation. Whether the money is treated as compensation for the insurance of the mortgages, etc., or interest on the sum borrowed by Miller from the trust company, as represented in his agreement with it, or a liquidation of the consideration which moved the trust company to extend its credit and which consideration would support its ownership of the mortgages until they were sold, the result reached would be the same. Miller, the broker, had the money in the trust company for the appellant to complete his building operation. This completed Miller's contract. The appellant's evidence, the stipulation filed and the uncontradicted facts in the case warrant the conclusion here reached. The learned president judge committed no error when he entered judgment non obstante veredicto. But appellant argues that on the delivery of the mortgages and the notes to Miller he was dealing with Miller as his agent, who had no authority to make an agreement with the bank. Admitting for a moment the agency, the answer to this argument is, that the form in which these securities were delivered by the appellant, the notes being signed in blank, and the mortgages assigned to the trust company, defendant, the apparent scope of Miller's authority in the course of his dealing with the appellant, and the receipt by the appellant of a portion of the benefits of the contract before any of the notes had been sold, would estop appellant from setting up such defense.

The assignments of error are overruled and the judgment affirmed at the cost of the appellant.